Summers, C. J.
In April, 1906, a suit was commenced entitled The Village of Dillonvale on Relation of Thomas McCábe against Harry Walker, William S. Parlett, William Lappin, George King, Asa Hooper and Oliver I. Guyton, as individuals and as councilmen of the village. The relator avers in the petition that he is a taxpayer of the village and that the defendants, on the first Monday of May, 1903, qualified as councilmen of the village and acted as such up to and on the fourth day of December, 1905. when they, as such councilmen, adopted the following resolution: “Be it resolved by the council of Dillonvale that each member shall receive his year’s salary as provided by the new code.”. That the *142 clerk issued to each a voucher for $48.00, and that the village treasurer paid to each $48.00 upon such voucher. That the council of the village had at no time by ordinance, or otherwise than by such resolution, provided for the payment of salaries to councilmen of the village, and then prayed for judgment for and in behalf of the village against the defendants and each of them in the sum of $288.00.
Each of the defendants filed a demurrer to the petition on six of the ten grounds authorized by statute. The court overruled the demurrers, and the defendants not desiring to plead further entered judgment against each in the sum of $48.00, with interest and costs. On error the circuit court affirmed.
The third, fourth, fifth and sixth grounds of the demurrer are, that the plaintiff has not legal capacity to sue; that there is a misjoinder of parties defendant; that separate causes of action against several defendants are improperly joined; and that the petition does not state facts sufficient to constitute a cause of action. The plaintiffs contend that Section 1777, Revised Statutes, which provides that the city solicitor shall apply in the name of the corporation to a court of competent jurisdiction, for an order of injunction to restrain the misapplication of the funds of the corporation, or the abuse of its corporate powers,- or the- execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinances ■ governing the same, or which was procured by fraud or corruption; and that he shall likewise, whenever an obligation or *143 contract made on behalf of the corporation granting a right or easement, or creating a public duty, is being evaded or violated, apply for the forfeiture or the specific performance of the same ; and in case any officer or board fails to perform any duty expressly enjoined by law or ordinance, he shall apply to a court of competent jurisdiction for a writ of mandamus to compel the performance of such duty; and Section 1778, Revised Statutes, which provides that in case the solicitor fails, upon the request of any taxpayer of the corporation, to make the application provided for in the preceding section, it shall be lawful for the taxpayer to institute suit for that purpose in his own name, on behalf of the corporation, do not authorize a suit by either the solicitor or a taxpayer to recover money illegally paid out of the treasury. They concede that if a remedial statute, giving a remedy which formerly might be had in equity, is not as full in its application or administration as the rules of equity permit, a party may still resort to equity for the remedy which the statute fails to provide, but contend that in such case the suit would have to be brought in the name of the taxpayer on behalf of himself and the other taxpayers.
Section 1777 does not confer a right, but imposes a duty upon the city solicitor, and while Section 1778 authorizes a taxpayer, in the cases specified, to bring suit if the solicitor upon request in writing-fails to do so, and prohibits the court to entertain such a suit by a taxpayer excepting in the event of such failure, still it is not to be construed as a limitation on the remedy by a taxpayer in cases, *144 not within the statute. In The Cincinnati Street Railroad Company et al. v. Smith et al., 29 Ohio St., 291, 303, Gilmore, J., speaking of these sections says: “The sections do not provide remedies that were previously unknown. Courts of equity had long1 taken jurisdiction and granted injunctions in such cases when properly presented by interested individuals, whose rights were put in jeopardy by the illegal or unauthorized acts, or threatened acts, of municipal corporations. The sections were therefore simply intended to regulate the practice in such cases to this extent, that applications for injunctions in such cases should be made by the city solicitor, and should not be made without his knowledge.”
The fact, therefore, that the relief sought by the taxpayer in the present case is not within the terms of those statutes does not show in him a want of capacity to sue.
Platt, etc., v. Colvin et al., 50 Ohio St., 703, was a suit by a stockholder in the United States Express Company, a joint stock association, to recover monev that had been stolen from the company. In the court of common pleas a demurrer to the petition was sustained on the ground that the plaintiff was without capacity to sue. In the opinion Williams, J., after stating the rule in chancery, that suits must be prosecuted by the real parties in interest, and all who unite in interest must be joined, and citing cases illustrative of the application of the rule with its exceptions, says: (711) “The rule, and its exceptions, in their breadth and substance, were adopted into our code (Sections 4993, 5007 and 5008, Revised *145 Statutes), and, by its provisions made applicable to the civil action which it substituted for what was theretofore known as the suit in equity and the action at law.” And it is there held that: “Section 5008, of the Revised Statutes, which provides that when the parties are very numerous and it is impracticable to bring them all before the court, one or more may sue for the benefit of all, applies to actions of a legal, as well as to those of an equitable nature.” And it is held that a stockholder in the unincorporated joint stock association might sue in behalf of himself and all other stockholders for the recovery of tlie money which had been stolen from the company.
If a stockholder in such an association may sue in behalf of himself and the other stockholders, and if a taxpayer may sue to enjoin the misapplication of the funds of a city, we see no good reason why he may not be permitted to sue on behalf of the city to recover the funds that have been misapplied. If those entrusted with the custody of public funds, or those whose duty it is to protect the public, interests are remiss in their duty, or refuse to act, the taxpayer should be permitted to do so, and the courts in the exercise of a sound discretion will prevent any abuse of the privilege.
Mr. Justice Field in Crampton v. Zabriskie, 101 U. S., 601, savs: “Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county, or the illegal creation of a debt which thev, in common with other property-holders of the county, may otherwise be compelled *146 to pay, there is at this day no serious question. The right has been recognized by the state courts in numerous cases; and from the nature of the powers exercised by municipal corporations, the great danger of their abuse, and the necessity of prompt action .to prevent irremediable injuries, it would seem eminently proper for courts of equity to interfere, upon the application of the taxpayers of a county, to prevent the consummation of a wrong, when the officers of these corporations assume, in excess of their powers, to create burdens upon property-holders. Certainly, in the absence of legislation restricting the right to interfere in such cases to public officers of the state or county, there would seem to be no substantial- reason zvhy a bill by or on behalf' of individual taxpayers should ■ not be entertained to prevent the misuse of corporate power. The courts may be safely trusted to prevent the abuse of their process in such cases.” And Judge Dillon (Dillon on Municipal Corporations [4 ed.], Section 922),' after a survey of the cases, American and English, states his conclusion to the effect that the taxpayer may invoke the aid of the courts to prevent the abuse of its powers by a municipality and that, in the absence of statutory regulations, the right to do so is not inconsistent with the right so to do in the state or some public officer. In Webster et al. v. Douglass County, 102 Wis., 181, it is said by Winslow, J., that: “It is well settled in this state that a taxpayer may maintain an action in equity, on behalf of himself and all other taxpayers, to restrain public officers from paying out the public money for illegal purposes and may *147 also, under the proper circumstances, compel public officers and even third persons to repay into the public treasury money already paid out illegally.” To the same effect is Land, Log & Lumber Company v. McIntyre, 100 Wis., 245.
A solicitor is not one of the officers of a village provided for by the municipal code, and the regulations prescribed by Sections 1777 and 1778 do not apply.
The fact that the suit in the present case is in the name of the village on relation of the taxpayer instead of in the name of the taxpayer for the use of the village, or on behalf of all the taxpayers of the village, has not in it sufficient merit to require a denial of relief, but the court may treat the action as one in the name of the taxpayer on behalf of the village.
It follows that the plaintiff is not without legal capacity to sue.
There are cases that hold that the defendants joined must be charged in the same-character and cannot be charged personally and officially. See Pomeroy’s Remedies and Remedial Rights, Section 502, and Bliss’ Code Pleading, Section 123, where the cases are cited and criticised. The object of the present, suit is to recover from the defendants personally and not as couricilmen, money averred to have been illegally paid to them from the village treasury, no judgment or relief against them as officials is asked, and we think they as councilmen are misjoined as defendants.
The next question raised by the demurrer is whether separate causes of action against several defendants are improperly joined. On the facts *148 stated the village might have maintained an action against each of the defendants to recover the money paid to him, but as said by Mr. Justice McLean in Gains and Wife v. Chew et al., 2 Howard, 619, 643: “There can be no doubt that a bill might have been filed against each of the defendants, but the question is whether they may not all be included in the same bill.” He also says (642) : “In general terms a bill is said to be multifarious, which seeks to enforce against different individuals, demands which are wholly disconnected.” And it is there held that the defendants were not misjoined although they had purchased distinct parcels of real estate and at different times because their title depended upon the power of the executors to convey the land, and in this controlling question they had a common interest. In Penn v. Playward, 14 Ohio St., 302, 306, Peck, C. J., says: “There-is much obscurity in the title of the code as to 'parties to civil actions/ owing to the effort to blend, in one system, the rules pertaining to suits at law and in chancery; but the rules of courts of equity will be found to predominate in its provisions.” The rule in equity pleading as to multifariousness is made applicable to the civil action of the code by the provision for a demurrer on the ground that separate causes of action against several defendants are improperly joined, and an examination of the cases in which that rule is applied leads to the conclusion that the defendants are propeidy joined. The controlling question is the right of the councilmen to compensation when it has not been fixed by ordinance. In that question the *149 defendants' are equally interested, for the same state- of facts applies to each and the result as to each must be the same whether the question^ is determined in one suit or in several.
The right of a councilman of a village to compensation for his services as such, when it has not been fixed by ordinance, depends upon whether it is fixed by statute, and upon this depends also the answer to the question whether the petition states a cause of action. The municipal code of 1902 (Section 126) provides' that the compensation of members of council in cities, “if any is fixed, shall be in accordance with the time actually consumed in the discharge of their official duties,” - and is limited not to exceed a stated sum per year. It is further provided that the salaries shall be paid semi-monthly and that a proportionate reduction shall be made for non-attendance upon any regular or special meeting; and that code twice provides (Sections 194 and 197) that no compensation shall be allowed to the members of the council of a village; but in 1904 (97 O. L., 118) these prohibitions were repealed and Section 197 was amended as follows: “Provided that members of council may receive as compensation the sum of two dollars for each meeting, not to exceed twenty-four meetings in any one year.”. The amended section does not provide, as does Section 126, respecting members of council in cities, that the compensation of members of council, “if any is fixed,” shall not exceed a stated sum per year, but that they may receive two dollars for each meeting. The statute itself fixes the compensation and we do not think the legislature intended that an ordinance should *150 be necessary to fix it. The statute does not fix it at $48.00 per year, but authorizes the payment of that amount, if twenty-four meetings are held in one year, and the petition does not aver that a less number, were held.
It follows that the petition does not state a cause of action and that the judgments are reversed and the petition dismissed.
The questions presented are very well considered in the circuit court in an opinion by Cook, J., •reported in 14 O. C. C. R. (N. S.), 385, and the case is reported here only because we reach a different conclusion upon the question of the necessity of an ordinance to fix the compensation.

Reversed.

Crew, Spear, Davis, Shauck and Price, JJ., concur.